UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL WILDLIFE FEDERATION,
INC., et al.,

    Plaintiffs,

    v.

UNITED STATES ARMY CORPS OF
ENGINEERS, et al.,

    Defendants.

Civil Action No. 17-772 (JDB)

## MEMORANDUM OPINION

Before the Court is [47] plaintiffs' motion for reconsideration of [45] the Court's March 29, 2018 order transferring this case to the U.S. District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a). Plaintiffs' motion asserts, among other things, that the Court erred by first ordering the transfer of a related case to that district, see Alabama v. U.S. Army Corps of Eng'rs, No. 17-cv-607, 2018 WL 1542321 at *10 (D.D.C. Mar. 29, 2018), and then ordering the transfer of this case for largely the same reasons. See Pls.' Mot. for Recons. of Mar. 29, 2018 Order [ECF No. 47] ("Pls.' Recons. Mot.") at 2 (arguing that the Court "did not address the significant differences between . . . the two cases" and thus "neglect[ed] to afford Plaintiffs full consideration of their position"). In opposing plaintiffs' motion, defendants argue only that the Court lacks jurisdiction because this case has already been electronically transferred out of this district. See Def.–Intervenor the State of Ga.'s Statement in Opp'n to Mot. for Recons. [ECF No. 48] at 1–2; Fed. Defs.' Resp. in Opp'n to Pls.' Mot. for Recons. [ECF No. 49] at 3–5; Water Supply Providers' Jurisdictional Resp. to Pls.' Mot. for Recons. [ECF No. 50] at 1–2. For the reasons that follow, the Court agrees with defendants that it lacks authority to reconsider its March 29, 2018 transfer order. The motion for reconsideration will therefore be denied.

## BACKGROUND

This litigation concerns a March 2017 update to the plan followed by the U.S. Army Corps of Engineers (the "Corps") for managing five dams in the Apalachicola–Chattahoochee–Flint River Basin (the "ACF River Basin"), a region that spans much of Georgia and parts of eastern Alabama and the Florida panhandle. See Pls.' Compl. [ECF No. 1] ¶¶ 23, 72, 75. Shortly after the update took effect, the State of Alabama filed a lawsuit challenging the Corps's decision to reallocate water from Lake Lanier, a reservoir in northern Georgia, to accommodate the needs of nearby metropolitan Atlanta. See Alabama, 2018 WL 1542321, at *4. Plaintiffs thereafter filed this action challenging the updated plan on various grounds, arguing that it would lead to "the collapse of the Apalachicola ecosystem in Florida" and cause "significant harm to the Chattahoochee River in Georgia and Alabama." Pls.' Compl ¶ 1; see Pls.' Consolidated Resp. in Opp'n to Def.–Intervenors' Mot. to Transfer Venue [ECF No. 42] at 3.

The State of Georgia and a group of Georgia water supply providers intervened as defendants in both actions and moved to transfer the cases to the Northern District of Georgia, where Lake Lanier is located. See Alabama, 2018 WL 1542321, at *4; March 29, 2018 Order [ECF No. 45] at 4. The Court granted both motions on March 29, 2018. Twelve days later, the cases were electronically transferred to the Northern District of Georgia, where they are currently pending. See Alabama v. U.S. Army Corps of Eng'rs, No. 18-cv-1529 (N.D. Ga. filed Apr. 10, 2018); Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs, No. 18-cv-1530 (N.D. Ga. filed Apr. 10, 2018). The next day, plaintiffs filed the instant motion seeking reconsideration of the Court's transfer order. See Pls.' Recons. Mot. at 1. The motion is now fully briefed and ripe for decision.

**DISCUSSION**

In this circuit, it is settled that the "physical transfer of the original papers in a case to a permissible transferee forum deprives the transferor circuit of jurisdiction to review the transfer." Starnes v. McGuire, 512 F.2d 918, 924 (D.C. Cir. 1974) (en banc); see also In re Sosa, 712 F.2d 1479, 1480 (D.C. Cir. 1983) (per curiam) (explaining that "[a] new proceeding seeking retransfer in the [transferee forum] . . . is 'the appropriate course of action'" for seeking post-transfer review (citation omitted)). Although this rule does not apply where there is "a substantial issue whether the district court had 'power to order the transfer,'" In re Briscoe, 976 F.2d 1425, 1427 (D.C. Cir. 1992) (per curiam) (citation omitted)—which may be the case, for example, where "the transfer is to a forum that is not permitted under Section 1404(a)," Starnes, 512 F.2d at 924 n.6—plaintiffs do not contend that this exception applies here. Rather, they claim that they were deprived of a "fair opportunity to seek review" of the Court's transfer order because the case was transferred twelve days after the order was entered. Pls.' Consolidated Reply in Supp. of Mot. for Recons. [ECF No. 51] ("Pls.' Reply") at 3 (quoting Starnes, 512 F.2d at 924). According to plaintiffs, the Court should have waited either twenty days (under Starnes) or fourteen days (in accordance with common practice in this district) to give them time to prepare and file their reconsideration motion.

As an initial matter, the Court notes that the D.C. Circuit's decision in Starnes dealt specifically with the transfer of prisoner suits brought against federal officials located in Washington, D.C. See 512 F.2d at 929–35 (setting out the "factors that generally will be relevant to a decision whether to transfer a particular prisoner petition under 28 U.S.C. § 1404(a)" and "the procedures to be followed both in making such a determination in the first instance and in assuring an opportunity for appellate review"); see also In re Asemani, 455 F.3d 296, 300 (D.C. Cir. 2006) ("The Starnes rule was adopted in order to 'allow the transferring judge to consider any late-

3

arriving briefs in opposition to the transfer which may have been delayed by inefficiencies in the prison mail services.'" (citation and alterations omitted)). After noting that the "practice" in this district was to wait ten days before carrying out a transfer order, the Starnes court concluded that "special circumstances surrounding pro se prisoner petitions filed from afar suggest a somewhat longer period of time," and that the ordinary ten-day delay therefore "might well be increased to 20 days" in such cases. Id. at 935. This reasoning suggests that Starnes's 20-day rule applies only to cases involving prisoners, where "special circumstances" favoring delay are present.

Indeed, the only case cited by plaintiffs in which a court in this district expressly relied on Starnes's 20-day rule was a suit brought by a pretrial detainee in Oklahoma against federal officials in D.C. See Nichols v. U.S. Bureau of Prisons, 895 F. Supp. 6, 10 n.4 (D.D.C. 1995); see also In re Jones, No. 02-5153, 2002 WL 1877009, at *1 (D.C. Cir. Aug. 14, 2002) (per curiam) (stating that delay under Starnes was proper in a suit brought by a Colorado prisoner against federal officials in D.C.); In re Briscoe, 976 F.2d at 1426 (suggesting that under Starnes, the transfer of a criminal case pursuant to Federal Rule of Criminal Procedure 21(b) should have been delayed for at least 20 days). The remaining cases suggest that in civil cases not involving parties incarcerated in other districts, the usual practice is to delay somewhere between ten and fifteen days. See Pls.' Reply at 4–6.[1]

---

[1] See, e.g., Dec. 1, 2014 Min. Entry, Defs. of Wildlife v. Jewell, 74 F. Supp. 3d 77 (D.D.C. 2014) (No. 14-cv-1025) (transferring case 14 days after entry of transfer order); May 14, 2013 Min. Entry, W. Watersheds Project v. Pool, 942 F. Supp. 2d 93 (D.D.C. 2013) (No. 12-cv-1113) (transferring case 14 days after entry of order); Oct. 11, 2012 Min. Entry, Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs, 893 F. Supp. 2d 49 (D.D.C. 2012) (No. 12-cv-1089) (transferring case 14 days after entry of order); Nov. 30, 2012 Min. Entry, Pac. Mar. Ass'n v. NLRB, 905 F. Supp. 2d 55 (D.D.C. 2012) (No. 12-cv-1477) (transferring case 10 days after entry of order); May 8, 2008 Min. Entry, FTC v. Cephalon, Inc., 551 F. Supp. 2d 21 (D.D.C. 2008) (No. 08-cv-244) (transferring case 10 days after entry of order); Lopez Perez v. Hufstedler, 505 F. Supp. 39, 41 (D.D.C. 1980) (directing that transfer be carried out 15 days after entry of order). But see Jul. 28, 2006 Min. Entry, Nat'l Wildlife Fed'n v. Harvey, 437 F. Supp. 2d 42 (D.D.C. 2006) (No. 05-cv-1671) (transferring case 43 days after entry of order); Dec. 18, 2003 Min. Entry, Sierra Club v. Flowers, 276 F. Supp. 2d 62 (D.D.C. 2003) (No. 02-cv-1652) (transferring case over four months after entry of order); Nov. 13, 2002 Min. Entry, Airport Working Grp. of Orange Cty., Inc. v. U.S. Dep't of Def., 226 F. Supp. 2d 227 (D.D.C. 2002) (No. 02-cv-1220) (transferring case 22 days after entry of order).

Moreover, even if Starnes's 20-day rule were applicable here, the D.C. Circuit has expressly rejected the notion that a violation of that rule is itself grounds for post-transfer review. See In re Briscoe, 976 F.2d at 1426–27 (stating that jurisdiction is "ordinarily" lacking even if Starnes's 20-day rule is not observed). As already noted, this rule is subject to only "one exception," In re Asemani, 455 F.3d at 300 (citation omitted), which applies where there is a "substantial issue" as to the transferor court's authority to effect the transfer, id., and plaintiffs do not contend that this exception applies here. And although the Court could "request, informally, that the [transferee court] return the file," In re Briscoe, 976 F.2d at 1427, there is no reason to do so here. Plaintiffs' motion presents no "substantial claim regarding the legality of the order," id., nor do its "merits . . . warrant such extraordinary action,"[2] In re Sosa, 712 F.2d at 1480 n.1. This is particularly so here, where the informal return of the case "would needlessly delay [an] already protracted proceeding." In re Briscoe, 976 F.2d at 1427.

Plaintiffs urge the Court to disregard this D.C. Circuit precedent in light of the Supreme Court's recent decision in Hamer v. Neighborhood Housing Services of Chicago, 138 S. Ct. 13 (2017), which warned lower courts to exercise caution when reading "jurisdictional" limitations

---

[2] As already noted, plaintiffs' chief ground for seeking reconsideration is that the Court purportedly paid insufficient attention to aspects of this case that distinguish it from the Alabama case. See Pls.' Recons. Mot. at 5–8. For example, plaintiffs assert that unlike in Alabama, where the specific issue was the Corps's decision to reallocate water from Lake Lanier, plaintiffs here are concerned about the impact that the entire updated water management plan—which plaintiffs allege was created in violation of various environmental statutes—will have on ecosystems in Florida. See id. at 6 ("An entire economy, culture and way of life is at stake for Floridians in the Apalachicola ecosystem."); see also Pls.' Compl. at 55 (seeking, among other things, an "injunction against implementation of the updated [plan] until the Corps properly evaluates the impact[] of its actions on the Apalachicola ecosystem"). But the fact remains that both lawsuits challenge the same action by the same agency: the Corps's March 2017 update to its water management plan for the ACF River Basin. As a result, the bulk of the factors that supported the Court's decision in Alabama also apply here. See, e.g., Alabama, 2018 WL 1542321, at *5 (explaining that the case most directly affects "the residents of Georgia . . . [,] Alabama[,] and other parts of the ACF Basin" and that the challenged decision "was made by personnel from the Corps' offices in Atlanta and Mobile"). To the extent that plaintiffs' motion identifies other differences, see, e.g., Pls.' Recons. Mot. at 7 (arguing that unlike the State of Alabama, plaintiffs here did not seek to circumvent unfavorable Eleventh Circuit precedent), those differences are insufficient to justify the "extraordinary" measure of post-transfer review, In re Sosa, 712 F.2d at 1480 n.1.

into statutes. See Pls.' Reply at 7–9 (quoting Hamer, 138 S. Ct. at 17, 20). But this Court is not free to ignore binding circuit precedent because of a possible inconsistency with an intervening decision of the Supreme Court. See Brookens v. Acosta, 297 F. Supp. 3d 40, 47 (D.D.C. 2018) (explaining that "district judges, like panels of the D.C. Circuit, are obligated to follow controlling circuit precedent until either the Circuit, sitting en banc, or the Supreme Court, overrules it" (citations and alterations omitted)). Nor does the fact that, on one occasion, a court in this district denied a motion for reconsideration of a transfer order on the merits instead of on jurisdictional grounds—in apparent contradiction of Starnes and In re Sosa—convince the Court that it should do the same here. See Martin–Trigona v. Meister, No. 87-cv-0452, 1987 WL 9518, at *1–2 (D.D.C. Apr. 7, 1987). The plaintiffs' remaining arguments are likewise unavailing. See Pls.' Recons. Mot. at 9–10 (arguing, among other things, that defendants "implicitly" acknowledged the Court's authority to adjudicate the plaintiffs' reconsideration motion by seeking the Court's leave to respond to the merits of the motion should it find that it has jurisdiction).

The Court agrees that plaintiffs did not inappropriately "wait" to prepare and file their reconsideration motion—which, after all, spans seventeen pages and raises numerous grounds for reconsideration. Pls.' Reply at 6. But plaintiffs did assume that transfer would be delayed for fourteen days, see id., and they have not pointed to any case, statute, or rule to justify that assumption. To the contrary, plaintiffs' own citations show that the practice here is not uniform, and, in the face of that lack of uniformity, plaintiffs neither moved to stay the implementation of the Court's transfer order nor otherwise notified the Court of their intention to seek reconsideration. Thus, because plaintiffs have failed to demonstrate either that an exception to the bar on post-transfer review applies or that extraordinary circumstances warrant an informal request

for the return of their case, their motion for reconsideration will be denied. A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: June 8, 2018